SEDGWICK     v.     THE     ILLINOIS     CENTRAL     RAILWAY
COMPANY.

**Railroads** : INJURY TO CAR-COUPLER : VIOLATION OF RULES : CONTRIB-
UTORY NEGLIGENCE.   Where it is the duty of an employe of a rail-
road company to uncouple cars, and he has agreed to observe a
rule of the company strictly forbidding all attempts to uncouple
cars while in motion, and he goes between standing cars for the
purpose of uncoupling them, but is unable to do so at once because
the pin is tight, and while he is making the effort the cars are put
in motion without a signal, and he, thinking that the motion of the
cars may loosen the pin, remains between them and continues his
efforts, in violation of the rule, and, moving along with the cars, he
falls into a cattle-guard of which he has knowledge, but at the time
does not think of, and thus is injured, he is guilty, as matter of law,
of contributory negligence, and he cannot recover of the company
for its negligence in moving the cars without a signal.

*Appeal from Black Hawk District Court.*—HON. C. F.
COUCH, Judge.

FILED, DECEMBER 21, 1888.

ACTION to recover damages for personal injuries
sustained by the assignor of plaintiff.   After the plain-
tiff had submitted the evidence on his part, the court
instructed the jury to return a verdict for the defendant.
Verdict was returned and judgment rendered in favor of
defendant.   The plaintiff appeals.

*O. C. Miller*, for appellant.

*W. J. Knight, H. B. Fouke* and *J. L. Husted*, for
appellee.

ROBINSON, J.—Most of the material facts involved
in this case are stated in the opinion rendered on a
former appeal.   See 73 Iowa, 158.   On the second trial
in the district court the agreement between Oakes, the

assignor of plaintiff, and the defendant, under which Oakes was employed, was introduced in evidence. This contains the following: "It is dangerous to uncouple or attempt to place links or pins in draw-bars while cars are in motion, and this is strictly forbidden." This agreement is admitted, [but it is insisted on the part of appellant that the train was not in motion when Oakes stepped between the tender and car to make the uncoupling; that he was then acting in the line of his duty; that the engineer had no right to move the train until he gave the signal; that he had a right to rely upon the supposition that the train would not be moved until he gave the signal; that he gave no signal; that the train was negligently started without a signal, and without notice to him; that he was unable to uncouple the car promptly by reason of the fact that a large pin had been used in making the coupling; and that he was injured by reason of the negligent moving of the train. The evidence given tends to support these claims. The evidence also shows that the pin in question was of a kind frequently used by defendant. Oakes testified that when the train began to move his attention was so occupied in the attempt to remove the pin that he did not think of the cattle-guard until he was in it. It is contended by appellant that it cannot be said as a matter of law that, because Oakes failed to recollect the cattle-guard at once when the train was put in motion, he was guilty of contributory negligence, and that there was error in not submitting that question to the jury.

Much stress is laid upon the fact that the train was put in motion wrongfully, and that up to that time he was engaged in the strict performance of his duties. This may be conceded, but there remains to be answered the question: Did Oakes exercise due care in remaining between the tender and car after the train was put in motion? Appellant says this was for the jury alone to answer. Whether it was or not depends upon the facts of the case as disclosed by the evidence, and not upon the conclusions which Oakes draws from them. When the train was started Oakes knew that it was dangerous,

and a violation of a rule of defendant, and of his agreement in entering its employment, to remain where he was. He knew the location of the cattle-guard, and had passed over it but a few moments before. It is true, he states that in his judgment he could not have stepped from between the tender and car after they were put in motion before the cattle-guard was reached, but he gives no fact to justify that conclusion, excepting that he was absorbed in his attempt to remove the coupling-pin. On the contrary, he states that if his attention had not been directed to the pin he could have stepped out, and avoided the danger. It is not claimed that there was anything unusual in the starting and moving of the engine excepting the absence of a signal. Before it was started, Oakes tried to remove the pin, and failed ; but he testifies that the starting of a train sometimes loosens a tight pin, and that after the one in question started he again attempted to remove the pin. Whether he was negligent at this time in not remembering the cattle-guard we do not determine, but when he voluntarily remained at the coupling with the knowledge that the train was in motion, he must be held to have assumed all the risks which he incurred, including the dangers of the cattle-guard. It will not do to say that he was so absorbed in the attempt to uncouple the car that he was unconscious of the moving of the train. His own testimony shows that he was not ; that he thought the moving might cause a slack, which would enable him to remove the pin. It also appears that the coupling in question was not an unusual one ; that tight pins were not uncommon ; and that the uncoupling of cars was a part of the regular duties of Oakes. There was nothing unusual in the circumstances under which he found himself when the train started, excepting the fact that it was started without a signal, and that was of a nature to warn him of his danger, and recall the rule of the company to his mind.

Appellant cites several cases in support of his claims, but we do not think they sustain the doctrine for which he contends. The case of *Snow v. Railroad*

*Co.*, 8 Allen, 449, especially relied upon, holds that where a railway employe in the necessary discharge of his duties goes between moving cars and an engine tò uncouple them, and is injured in consequence of a defect of which he had knowledge, that fact alone would not defeat his recovery, although it would be a circumstance to be considered by the jury. The court said : "If the service to be performed by the plaintiff was of a character to require that his exclusive attention should be fixed upon it, and that he should act with rapidity and promptness, it could hardly be expected that he should always bear in mind the existence of the defect, or be prepared at all times to avoid it." This rule was approved in *Greenleaf v. Ill. Cent. Ry. Co.*, 29 Iowa, 47, and in *Greenleaf v. Dub. & S. C. Ry. Co.*, 33 Iowa, 56. But in each of those cases it was the duty of the person injured to do that in which he was engaged when the injury was received, while in this case it was the duty of Oakes to desist from further attempts to perform the service in which he was engaged the moment the train moved. The case of *Williams v. Cent. Railroad of Iowa*, 43 Iowa, 396, supports to some extent the conclusions we have reached. The judgment of the district court is

AFFIRMED.